UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDY HARDRICK,

                Plaintiff,

v.

THOMAS MACKIE,

                Defendant.

_____/

Case No. 1:18-cv-580

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Freddy Hardrick, a state prisoner at a Michigan Department of Corrections (MDOC) facility. This matter is now before the Court on defendant Thomas Mackie's motion for summary judgment based on failure to exhaust (ECF No. 10).

### I.        Background

Plaintiff's complaint alleged that defendant Oaks Correctional Facility (ECF) Warden Thomas Mackie denied him out-of-cell exercise in violation of the Eighth Amendment from September 11, 2016 through October 29, 2016. *See* Compl. (ECF No. 1, PageID.3-6).

### II.       Defendant's motions for summary judgment

### A.       Legal standard for summary judgment

Defendant seeks summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

1

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that a

party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties'

burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment,

the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.      Failure to Exhaust

### 1.      Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison

conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See*

*Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must

exhaust available administrative remedies, even if the prisoner may not be able to obtain the

specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520;

*Booth*, 532 U.S. at 741.   One reason for creating prisoner grievance procedures under the PLRA

was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes
> concerning the exercise of their responsibilities before being haled into court.   This
> has the potential to reduce the number of inmate suits, and also to improve the
> quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies,

prisoners must complete the administrative review process in accordance with the deadlines and

other applicable procedural rules.   *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to

'properly exhaust.'"   *Jones*, 549 U.S. at 218.

## 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances.

*See* Policy Directive 03.02.130 (effective July 9, 2007).   A prisoner must first attempt to resolve

a problem with the staff member within two business days of becoming aware of the grievable

issue, unless prevented by circumstances beyond his or her control.   *Id.* at ¶ P.   If the issue is not

resolved, then the grievant may file a Step I grievance on the prescribed form within five business

days after the grievant attempted to resolve the issue with appropriate staff.   *Id.* at ¶¶ P and R.

The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.   Information provided is to be
> limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,
> why, how).   Dates, times, places and names of all those involved in the issue being
> grieved are to be included.

*Id.* at ¶ R (emphasis in original).   The prisoner must send the Step I grievance to the appropriate

grievance coordinator.   *Id.* at ¶ V.   If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.   *Id.* at ¶ BB.   Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.   *Id.* at ¶ FF.

### 3.    Discussion

Plaintiff's claim appears to arise from his placement in administrative segregation after he was found guilty of inciting a riot.   Hardrick Decl. (ECF No. 15-1, PageID.225).   Warden Mackie points out that plaintiff filed 12 Step III grievances while incarcerated at ECF: ECF-17-07-2346-15Z (mailroom worker opened his outgoing mail); ECF-17-06-2122-28D (plaintiff's grievance that the Security Classification Committee's May 2017 decision to continue him in administrative segregation was improperly rejected); ECF-17-06-2117-28J (Sgt. Porter failed to interview plaintiff in response to his claims in another grievance); ECF-17-05-1709-22B (plaintiff was not released from administrative segregation despite the fact that an acting deputy director approved his release); ECF-17-05-1638-9A (Trinity Food Service's chicken casserole was undercooked, missing noodles, and had a watery sauce); ECF-17-05-1607-28b (the meals served by Trinity Food Service left him malnourished); ECF-17-01-0121-27A (Counselor Johnson conducted an administrative hearing and denied him possession of personal mail (football cards) because the cards were not sent from an approved vendor); ECF-17-01-0122-28A (the mailroom rejected a package from plaintiff's father containing football cards); ECF-17-01-0125-27Z (mailroom staff purposely delayed his mail for two weeks); ECF-16-12-3781-27Z (plaintiff's catalog order for an indoor antenna was improperly denied); ECF-16-11-3444-17Z (housing staff

members were slow to respond to plaintiff's medical emergency and turn the water on in his cell so that he could get a drink); and, ECF-16-10-3174-03H (plaintiff did not receive all of the state issued property he was entitled to after transferring to ECF).  Defendant's Brief (ECF No. 11, PageID.74-77); MDOC Step III Grievance Report (ECF No. 11-3, PageID.90-93).  However, none of these grievances addressed plaintiff's present claims against Warden Mackie.  *Id.*

In his response, plaintiff contends that MDOC staff did not process a grievance which he filed with respect to Warden Mackie. Specifically, plaintiff contends that he submitted a grievance to grievance coordinator Bassett on October 18, 2016 "[p]ertaining to the denial of Plaintiff [sic] 7-day break by warden (Thomas Mackie)" and that he never received a response from the grievance coordinator.   Plaintiff's Response (ECF No. 15, PageId.177); ECF No. 15-1, PageID.195).   In his declaration, plaintiff stated that since he did not receive a response from the grievance coordinator, he "had to forward his grievance to [L]ansing Step III in accordance with grievance policy."  Hardrick Decl. (ECF No. 15-1, PageID.226).   In this regard, plaintiff submitted a copy of a Step III grievance dated November 1, 2016, which he also sent to the "Governor's Office," alleging that defendant Warden Mackie engaged in retaliation and abuse of authority with respect to prisoners who were found guilty of inciting the riot at the Kinross Correctional Facility (KCF).   Step III Grievance (ECF No. 15-1, PageID.199).

In a letter dated November 10, 2016, MDOC Grievance Section Manager Richard D. Russell advised plaintiff that since March 5, 2007 "grievances may not be filed directly to Step III for any reason."   Russell Letter (ECF No. 15-1, PageID.201). About two months later, it appears that plaintiff decided to file a Step II grievance, when he requested a Step II grievance form on January 6, 2017.   Kite (Jan. 6, 2017) (ECF No. 15-1, PageID.209).   Plaintiff apparently

filed a Step II grievance on his own form, which was received at the MDOC's Office of Legal Affairs on February 7, 2017.  *See* Plaintiff's Handwritten grievance form (ECF No. 15-1, PageID.211).   Plaintiff also submitted a handwritten complaint to the MDOC's Internal Affairs division claiming staff corruption.   *See* Complaint to Internal Affairs (ECF No. 15-1, PageID.219-221).

Based on this record, plaintiff has not demonstrated that he properly exhausted his claim.  Nor has plaintiff demonstrated that he was unable to take steps to exhaust his claim. Assuming that plaintiff's Step I grievance was not processed for some reason, he did not take steps to attempt to exhaust the grievance under the policy directive, *e.g.*, rather than attempting to file *something* at Step II, plaintiff filed a Step III appeal with a copy to someone not involved in the grievance process (*i.e.*, the governor).   Based on this record, plaintiff has not properly exhausted a grievance against defendant with respect to the alleged denial of out-of-cell exercise from September 11, 2016 through October 29, 2016.[1]   Accordingly, defendant's motion for summary judgment on the basis of exhaustion should be granted.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant's motion for summary judgment for lack of exhaustion (ECF No. 10) be **GRANTED** and that this action be **TERMINATED**.

Dated:          July 11, 2019                              /s/ Ray Kent
                                                           United States Magistrate Judge

---

[1]Plaintiff filed a second declaration (ECF No. 16) stating additional facts.   However, the Court will not consider the second declaration because it does not comply with the requirements of 28 U.S.C. § 1746.   Rather than stating that the facts in the second declaration are "true and correct" as required by § 1746, plaintiff made up his own equivocal statement regarding the truthfulness of his statements, *i.e.*, "the foregoing is true and correct to the best of my belief, knowledge, gifts, and understandings."   ECF No. 16, PageID.231).

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).